UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-01260

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| STARBUCKS CORPORATION, a Washington | : |
| corporation; | : |
| | : |
| QDOBA RESTAURANT CORPORATION, a | : |
| Colorado corporation; | : |
| | : |
| and | : |
| | : |
| BETTY L. SCHLAGEL, LLC, a Colorado | : |
| limited liability company; | : |
| | : |
| Defendants. | : |
| _____/ | |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, STARBUCKS CORPORATION, a Washington corporation; QDOBA RESTAURANT CORPORATION, a Colorado corporation; and BETTY L. SCHLAGEL, LLC, a Colorado limited liability company (sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.     Defendant BETTY L. SCHLAGEL, LLC's Black Diamond Marketplace, is located at and near 11169 I-25 Frontage Road, Firestone, Colorado 80504, in Weld County ("Black Diamond Marketplace").

3.     Defendant STARBUCKS CORPORATION's café is located in the Black Diamond Marketplace ("Starbucks").

4.     Defendant QDOBA RESTAURANT CORPORATION's restaurant is located in the Black Diamond Marketplace ("Qdoba").

5.     Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendants' property, café, and restaurant are located in and do business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(B) and (E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.     Black Diamond Marketplace is a place of public accommodation.

9.     Starbucks is a place of public accommodation.

10.    Qdoba is a place of public accommodation.

11.    Defendants are responsible for complying with the obligations of the ADA.

12.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple

sclerosis and requires the use of a wheelchair for mobility.

13.     Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

14.     Fred Nekouee has visited the property which forms the basis of this lawsuit on July August 2, 2018 and on October 2, 2018, and he bought goods and sought to avail himself of the goods and services at Black Diamond Marketplace.

15.     Fred Nekouee visited and bought food and beverages at Qdoba on August 2, 2018 and on October 2, 2018.

16.     Fred Nekouee visited and bought a coffee beverage at Starbucks on August 2, 2018.

17.     Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on October 2, 2018.

18.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

19.     The Plaintiff has definite plans to return to the area and to Black Diamond Marketplace, and to Starbucks and Qdoba in early May of 2019.

20.     Black Diamond Marketplace, Starbucks and Qdoba are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

21.     The Plaintiff likes the food and menu at Qdoba in the Black Diamond Marketplace.

22.     The Plaintiff plans to return to eat at Qdoba again.

23.     The Plaintiff likes the coffee beverages and sandwiches at Starbucks in the Black

Diamond Marketplace.

24.     The Plaintiff plans to return to purchase a coffee beverage or food item at Starbucks again.

25.     For the reasons set forth in paragraphs 13-24 and 36, Fred Nekouee plans to return to Black Diamond Marketplace, and its stores, shops and restaurants.

26.     The Plaintiff has encountered architectural barriers at the subject property.

27.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in Qdoba and Starbucks.

28.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

29.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

30.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

31.     On his visit to Black Diamond Marketplace, the Plaintiff encountered excessively steep slopes in its parking lot.

32.     The Plaintiff encountered and observed barriers to access the men's restroom in Qdoba; and so, he also tried to use the women's restroom in Qdoba, in which women's restroom he also encountered and observed barriers to access.

33.     The Plaintiff encountered and observed barriers to access the men's restroom in Starbucks; and so, he also observed the condition and barriers to access in the women's restroom.

34.     The Plaintiff is deterred from visiting Black Diamond Marketplace even though he enjoys its  food, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

35.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 40 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

36.     Fred Nekouee desires to visit Black Diamond Marketplace not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

37.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

38.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

39.     Preliminary inspections of Black Diamond Marketplace, Qdoba, and Starbucks show that violations of the ADA exist.

40.     The violations of the ADA that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.  (i) In the parking lot, there are no parking spaces for disabled patrons with van accessible signage.   (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of signage and it deters him from visiting the Black Diamond Marketplace.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.  (i) In the parking space for disabled patrons in front of Zoup has a running slope steeper than 1:48 (2%).   (ii) This running slope in this parking space is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered this slope and it deters him from visiting Starbucks which is along the accessible route from this parking space.   (iv) The action required to reduce this slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c.  (i) In the parking lot, the running slope of the front section (closest to the building) of the access aisle serving the parking spaces for disabled patrons in front of Zoup is as steep as about 1:28.6 (3.5%) and steeper than a slope of 1:48 (2%).   (ii) This running slope in this parking space for disabled patrons is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope, and this slope made his wheelchair unstable.   (iv) The action required to reduce the slope in this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the right portion (as one faces the building) of the front section (closest to the building) of the access aisle serving the parking spaces for disabled patrons in front of Zoup has a cross slope as steep as about 1:16.7 (6%) and steeper than a cross slope of 1:48 (2%).   (ii) This cross slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope in this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) The cross slope of the walking surface in front of Starbucks is as steep as about 1:23.3 (4.3%) and steeper than a cross slope of 1:48 (2%).   (ii) This cross slope of  this walking surface along the accessible route to Starbucks is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3. (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) The slope of the surface within the required maneuvering space of 60 inches in front of  the entrance door to Qdoba is about 1:22.7 (4.4%) and steeper than a slope of 1:48 (2%).   (ii) This slope within the required maneuvering space of 60 inches in front of the entrance door is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) In his wheelchair, the Plaintiff encountered this slope in front of the entrance door to Qdoba, and due to its slope, his wheelchair slipped sideways while he was trying to open the door.   (iv) The action required to reduce the

slope within this required maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

## QDOBA ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA

g.  (i) The force needed to open the entrance door to Qdoba is about 10 pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter Qdoba.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The large cup compartment of the stand for cup lids in Qdoba is about 54 inches above the floor and higher than 48 inches above the floor.   (ii) This compartment for large cup lids is higher than the maximum height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) Due to their height above the finish floor, the Plaintiff could not reach the large cup lids from his wheelchair.   (iv) The action required to replace or relocate this cup holder is easily accomplishable and able to be carried out without much difficulty or expense.

## MEN'S RESTROOM IN QDOBA

i.  (i) The force needed to open the entrance door to the men's restroom in Qdoba is about 7 pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010,

ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter Qdoba.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) In the men's restroom in Qdoba, the restroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is blocked by a trans can and is less than the minimum required clearance of 60 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the location of a trash can in the restroom door's pull side maneuvering clearance space, the Plaintiff required assistance to exit the men's restroom while moving in his wheelchair.   (iv) The action require to put a written policy in place to prevent a trash can from being located in this pull side maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the Qdoba men's restroom, the accessible toilet compartment is about 34 inches wide and is less than 60 inches wide.   (ii) This wheelchair accessible toilet compartment is less than the minimum width of 60 inches, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to its narrow width, the Plaintiff required assistance to maneuver his wheelchair into and out of this compartment.   (iv) The action required to increase the width of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) As shown in the photograph below, the accessible toilet compartment in the Qdoba men's restroom does not have a rear wall grab bar.   (ii)   The lack of a rear wall grab bar in this accessible toilet compartment is in violation of Federal Law 2010, ADAAG

§ 604.5.   (iii) Due to the lack of a rear wall grab bar in this accessible toilet compartment, the Plaintiff required assistance to transfer himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



m.  (i)   As shown in the photograph below, in the men's restroom in Qdoba, the lavatory supply and drain pipes under the sink are not insulated.   (ii) The lavatory supply and drain pipes under the sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) In his wheelchair, the Plaintiff encountered these pipes under this sink and he risked skin burns and injury to his legs since they are not insulated.   (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



n.  (i) In the men's restroom in Qdoba, the clearance space for a front approach to the urinal is less than 30 by 48 inches.  (ii)  This clearance space for a front approach to the urinal is less than the required minimum clear floor space of 30 by 48 inches, in violation of Federal Law 2010, ADAAG §§ 305.7 and 605.3.  (iii) The Plaintiff observed this lack of clearance space, and it deters him from visiting Qdoba.  (iv) The action required to increase this clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

o.  (i) In the men's restroom in Qdoba, the paper towel dispenser outlet is about 52 inches above the floor and higher than 48 inches above the floor.  (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.

(iii) Due to its height above the floor, the Plaintiff could not obtain a paper towel from this paper towel dispenser outlet. (iv) The action required to relocate this paper towel dispenser outlet is easily accomplishable and able to be carried out without much difficulty or expense.

p. (i) In the men's restroom in Qdoba, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor. (ii) This condition is in violation of Federal Law 2010, ADAAG § 603.3. (iii) The Plaintiff observed this condition. (iv) The action required to adjust the height of this mirror's reflecting surface is easily accomplishable and able to be carried out without much difficulty or expense.

q. (i) In the men's restroom in Qdoba, the coat hook is about 63 inches above the floor and higher than 48 inches above the floor. (ii) This coat hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4. (iii) Due to its height above the floor, the Plaintiff tried but could not reach this coat hook to use it. (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN QDOBA**

r. (i) The force needed to open the entrance door to the women's restroom in Qdoba is about 10 pounds and more than 5 pounds. (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter Qdoba. (iv) The action required

to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the women's restroom in Qdoba, the side wall grab bar only extends about 46 inches from the rear wall and does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of extension from the rear wall, the Plaintiff had difficulty using the side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace or relocate this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

t.    (i) In the women's restroom in Qdoba, the lavatory drain pipe under the sink is not insulated.   (ii) The lavatory drain pipe in the women's restroom in Qdoba is not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   (iii) Due to this lack of insulation on this drain pipe, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to insulate this drain pipe is easily accomplishable and able to be carried out without much difficulty or expense.

u.    (i) In the women's restroom in Qdoba, the leading edge of the paper towel dispenser located between 27 and 80 inches above the floor has a leading edge that protrudes horizontally into the circulation path about 9 inches and more than 4 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 307.2.   (iii) The Plaintiff observed this condition.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

v.    (i) In the women's restroom in Qdoba, the centerline of the toilet paper dispenser

is about 14 inches from the front of the water closet or toilet and not between 7 and 9 inches from the front of the water closet.   (ii) The centerline of this toilet paper dispenser is not between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to its location, the Plaintiff could not reach the toilet paper from this dispenser from the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) As shown in the photograph below, in the women's restroom in Qdoba, the flush control for the toilet is not mounted on the open and wide side of the clear floor space. (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of this flush control for the toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to relocate the flush control on this toilet is easily accomplishable and able to be carried out without much difficulty or expense.



x.  (i) In the women's restroom in Qdoba, the coat hook is installed at about 63 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook, and it deters him from visiting Qdoba.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

y.  (i) In the women's restroom in Qdoba, the push tab for the liquid soap dispenser is about 53 inches above the floor and higher than 48 inches above the floor.   (ii) This push tab for the liquid soap dispenser is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not reach the push tab for this liquid soap dispenser.   (iv)

The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR TO STARBUCKS**

z.   (i) The force needed to open the entrance door to Starbucks is about 10 pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter Starbucks.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN STARBUCKS**

aa.   (i) The force needed to open the entrance door to the men's restroom in Starbucks is about 8 pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the men's restroom.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb.  (i) In the men's restroom in Starbucks, the door push side maneuvering clearance in a front approach perpendicular to the doorway is blocked by a trash can and is less than 48 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.

(iii) The Plaintiff encountered a trash can in this maneuvering clearance space while moving in his wheelchair to exit the men's restroom, and due to the lack of clearance space, he required assistance to exit the restroom.   (iv) The action required to put a written policy in place not to locate trash cans in this maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In Starbucks, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is blocked by a baby's high chair and is less than 18 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the location of this baby's high chair, the Plaintiff required assistance to enter the men's restroom in Starbucks. (iv) The action required to put a written policy in place to not locate high chairs or other furniture in this space is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in Starbucks, the lavatory drain pipe under the sink is not fully insulated.   (ii) This condition is in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   (iii) Due to the lack of full insulation on the drain pipe under this sink, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to fully insulate this drain pipe under the sink is easily accomplishable and able to be carried out without much difficulty or expense.

### WOMEN'S RESTROOM IN STARBUCKS

ee.   (i) Due to the difficulty the Plaintiff had using the men's restroom, he tried the women's restroom.   (ii) The force needed to open the entrance door to the women's restroom in Starbucks is about 10 pounds and more than 5 pounds.   (iii) The force needed

to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iv) Due to the force necessary to open this door, the Plaintiff required assistance to open this door to enter the women's restroom.   (v) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the women's restroom, the water closet or toilet does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.6.   (iii) The Plaintiff observed this condition, and it deters him from visiting Starbucks.   (iv) The action required to relocate the flush control on this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In Starbucks, the women's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is blocked by a baby's high chair and is less than 18 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the location of this baby's high chair, the Plaintiff required assistance to enter the women's restroom in Starbucks.   (iv) The action required to put a written policy in place to not locate high chairs or other furniture in this space is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) in the women's restroom in Starbucks, there is a change in level of greater than 0.25 inches between the floor drain and the tile in the accessible toilet compartment.   (ii) This change in level is greater than the maximum allowed change in level of 0.25 inches,

in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.  (iii) The Plaintiff observed this change of level, and it deters him from visiting Starbucks.  (iv) The action required to reduce this change of level at this floor drain is easily accomplishable and able to be carried out without much difficulty or expense.

41.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

42.     The discriminatory violations described in paragraph 40 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

43.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

44.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

45.    Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

46.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

47.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

48.    Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

49.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

50.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter Black Diamond Marketplace, Qdoba, and Starbucks, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*